# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

                Plaintiff,

    v.

Robert George Head, Jr.,

                Defendant.

**MEMORANDUM OPINION
AND ORDER**
Criminal No. 02-75(1) ADM/RLE
Civil No. 06-3873 ADM

---

David M. Genrich, Esq., Assistant United States Attorney, Minneapolis, MN, on behalf of Plaintiff.

Robert George Head, Jr., *pro se*.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge pursuant to Defendant Robert George Head, Jr.'s ("Defendant") 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence ("§ 2255 Motion") [Docket No. 186].[1] For the reasons set forth herein, Defendant's Motion is denied.

## II. BACKGROUND[2]

In the early morning hours of January 19, 2002, Defendant, a member of the Red Lake Band of Chippewa Indians, smoked crack cocaine at the home of his girlfriend, Patricia Mountain ("Mountain"), on the Red Lake Reservation. Kevin Boland ("Boland"), Alejandro Garcia ("Garcia"), and Alana Brown ("Brown"), Defendant's daughter, were also present and smoked crack cocaine. Later in the day, Defendant and Brown met with Jeffrey Dolson

---

[1] All docket references are to Criminal No. 02-75(1).

[2] The facts are summarized from evidence adduced at Defendant's March 2004 trial.

("Dolson") and Arlen Rice ("Rice"), and the four of them drove together in Defendant's truck. While driving, Defendant encountered Garcia and Mountain in Garcia's car. Defendant followed Garcia around the Red Lake Indian Reservation, rammed Garcia's car, and threatened to kill him. Defendant and the others in his truck then drove to Mountain's home, where Defendant kicked in the door, held a gun to Boland's head, and demanded money and drugs. Defendant, Dolson, and Brown then assaulted Boland and left. Garcia returned to Mountain's residence and discovered that Boland was injured. Shortly thereafter, Defendant and the others returned, prompting Garcia and Boland to flee on foot. Defendant caught Garcia and assaulted him until a Red Lake police officer arrived. Defendant was arrested on tribal charges by the Red Lake Police Department that morning. On February 13, 2002, a hearing was held in a Red Lake Tribal Court and Defendant was extradited to federal custody for criminal proceedings in this Court.

On August 14, 2002, after two days of trial that included adverse testimony from his daughter, Alana Brown, Defendant pled guilty to one count of aggravated assault. The jury was dismissed. On September 4, 2002, Defendant moved to withdraw his guilty plea based in part on an allegation that his trial counsel was ineffective. Because he might need to testify regarding Defendant's motion, Defendant's counsel, Douglas Olson ("Olson"), was granted permission to withdraw as counsel on September 16, 2002, and Patrick Noaker ("Noaker") was subsequently appointed as Defendant's counsel. On January 29, 2003, Defendant's motion to withdraw his guilty plea was denied, and he was sentenced. The Court of Appeals reversed and remanded on August 21, 2003, finding that Defendant's guilty plea was never expressly accepted. See United States v. Head, 340 F.3d 628 (8th Cir. 2003).

2

A second trial was held in March 2004.  The jury returned a verdict of guilty on two counts of aggravated assault in violation of 18 U.S.C. §§ 2, 113(a)(3), 1151, and 1153(a), and one count of brandishing a firearm during a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii).  Judgment [Docket No. 162] at 1.  Defendant was sentenced to 204 months in prison and 5 years of supervised release.  On May 13, 2005, the Eighth Circuit denied Defendant's appeal and affirmed the conviction.  United States v. Head, 407 F.3d 925 (8th Cir. 2005).  On April 17, 2006, the Supreme Court denied Defendant's petition for writ of certiorari.  Head v. United States, 547 U.S. 1082 (2006).

This Court received Defendant's § 2255 Motion on September 28, 2006.  In his § 2255 Motion and supplemental memoranda, Defendant asserts fifteen grounds for post-conviction relief.  Grounds 1-11 are asserted in Defendant's § 2255 Motion.  Ground 12 is set forth in Defendant's First Motion to Supplement [Docket No. 189].  Ground 13 is advanced in Defendant's Second Motion to Supplement [Docket No. 199].  Grounds 14-15 are asserted in Defendant's Reply Brief [Docket No. 205].  Additionally, Defendant has filed "Suggestions" [Docket No. 190] in support of his § 2255 Motion.

## III. DISCUSSION

28 U.S.C. § 2255 provides persons in federal custody with a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of the sentence prescribed by the court.  See United States v. Addonizio, 442 U.S. 178, 185 (1979).  Section 2255 is not a substitute for direct appeal, and "the failure to raise an issue on direct appeal acts to bar a petitioner from raising that issue for the first time in a section 2255 motion."  Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997).  It is also well established that "issues raised

and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255." United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001).

A prisoner is entitled to an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. A hearing is unnecessary if "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995). Here, the record conclusively shows that Defendant is not entitled to relief on his claims.

**Grounds 1, 4, and 6: Illegal Extradition**

Defendant alleges a number of defects in his extradition from Red Lake, including the failure to appoint counsel for him during his extradition hearing, and unlawful coercion by federal authorities. Defendant argues these alleged defects deprived this Court of subject matter jurisdiction to proceed with the federal criminal charges. However, Defendant did not raise these claims in his direct appeal and therefore they are procedurally barred.

Assuming arguendo that Defendant's extradition-related claims are not procedurally barred, they fail on the merits because "it is well established that an illegal arrest does not void a subsequent conviction." Weddell v. Meierheanry, 636 F.2d 211, 214-15 (8th Cir. 1980), citing Gerstein v. Pugh, 420 U.S. 103, 119 (1975). The Second Circuit has recognized an exception to this general rule for cases where the illegal arrest shocks the conscience. See United States v. Toscanino, 500 F.2d 267, 274-79 (2d Cir. 1974) (remanding for further development of the record where defendant alleged "corruption and bribery of a foreign official as well as

4

kidnapping, accompanied by violence and brutality to the person"). Here, Defendant alleges the federal prosecutor coerced the Red Lake Tribal Court to agree to Defendant's extradition. Assuming these allegations are true, the alleged conduct does not rise to a level that shocks the conscience. Therefore, Defendant's alleged illegal extradition can not void his conviction.

**Ground 2: Ineffective Assistance of Counsel**

To prevail on an ineffective assistance claim, a prisoner must show (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. Courts employ a strong presumption that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id.

Defendant argues Noaker's performance was deficient for failing to raise claims regarding the legality of his extradition from Red Lake. However, for the reasons discussed above, an allegedly illegal extradition can not void a subsequent conviction. Therefore, counsel's performance was not deficient in this respect.

Defendant next alleges that his counsel failed to conduct an adequate investigation of the evidence and potential witnesses in the case. Defendant also argues that greater efforts should have been made to obtain allegedly exculpatory materials from the Government. Finally, Defendant alleges counsel failed to adequately impeach certain witnesses. However, these allegations relate largely to collateral matters that do not call into question the jury's guilty

verdict.  Defendant's speculative allegations do not satisfy either prong of the <u>Strickland</u> test.

Accordingly, Defendant's ineffective assistance claim fails.[3]

**Ground 3: <u>Brady</u> Violations**

Defendant next claims that the Government violated its discovery obligations under

<u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  Defendant did not raise this claim in his direct appeal

and therefore the claim is procedurally barred.  Arguing against a procedural bar, Defendant

claims his appellate counsel refused his request to raise the issue.  Regardless, assuming

arguendo that the claim is not procedurally barred, Defendant can not prevail on his <u>Brady</u> claim.

To prevail on his <u>Brady</u> claim, Defendant must show "(1) the prosecution suppressed

evidence, (2) the evidence was favorable to him, and (3) the evidence was material to either his

guilt or his punishment."  <u>Mandacina v. United States</u>, 328 F.3d 995, 1001 (8th Cir. 2003)

(quotation marks and citation omitted).  Materiality is established by showing "a reasonable

probability that if the allegedly suppressed evidence had been disclosed at trial the result of the

proceeding would have been different."  <u>Drew v. United States</u>, 46 F.3d 823, 828 (8th Cir. 1995).

A reasonable probability is one that undermines a court's confidence in the outcome of the

proceeding.  <u>Id.</u>

The specific evidence Defendant refers to are items allegedly gathered during the tribal

investigation such as jail logs, property inventory sheets, and personal notes.  Defendant also

claims the government failed to produce Alana Brown's tribal criminal record.  Defendant

---

[3] Defendant also bases his ineffective assistance claim on his first trial counsel's performance.  However, Defendant has no basis for such an argument because his guilty plea was vacated and he received a new trial.  Regardless, the Court finds that Defendant's first trial counsel provided effective representation.

argues this evidence would have allowed him to attack Brown's credibility. However, the jury was aware that Brown used crack cocaine and had entered a plea agreement in exchange for the Government's recommendation of a reduced sentence. March 17, 2004 Tr. [Docket No. 168] at 45-47, 85. Given that Brown's credibility was effectively attacked, the alleged omissions regarding her criminal record do not undermine this Court's confidence in the outcome of the trial.

The remainder of Defendant's <u>Brady</u> allegations and arguments are vague, conclusive, and speculative. They do not undermine this Court's confidence in the jury's verdict.

**Grounds 5 and 11: Double Jeopardy**

Defendant next alleges a violation of the Double Jeopardy Clause. Defendant first argues that his pretrial detention for tribal charges amounted to punishment and therefore his subsequent conviction on identical federal charges amounted to a second round of punishment for the same crime. However, Defendant's Double Jeopardy claim fails because "[p]retrial detention does not trigger the attachment of 'jeopardy' so as to invoke the protection of the Double Jeopardy Clause." <u>United States v. Warneke</u>, 199 F.3d 906, 908 (7th Cir. 1999).

In response, Defendant argues that "the charges in the Redlake Nation Tribal Court were federal, and the overlapping charges were double jeopardy, as they were multiple punishments for the same offense, which the Double Jeopardy Clause protects against." Def.'s Reply Brief at Claim V. However, despite Defendant's arguments to the contrary, "tribal and federal prosecutions are brought by separate sovereigns and are not for the same offense for purposes of the Double Jeopardy Clause." <u>United States v. Norquay</u>, 702 F. Supp. 228, 229-30 (D. Minn. 1989). Defendant speculates that the tribal charges were a sham and were merely a cover for a

7

federal prosecution.  See Bartkus v. Illinois, 359 U.S. 121, 123-24 (1959) (recognizing that state prosecution and subsequent federal prosecution for same crime could violate double jeopardy if state acted as "merely a tool of the federal authorities").  However, he offers no credible basis for this argument.  Defendant's double jeopardy claim fails.

**Ground 7: Selective Prosecution**

Defendant also raises a claim of selective prosecution.  "A selective-prosecution claim 'alleges a defect in instituting the prosecution' that 'must be raised before trial.'  Otherwise, it is waived."  United States v. Huber, 404 F.3d 1047, 1054 (8th Cir. 2005), quoting Fed. R. Crim. P. 12(b)(3)(A).  Defendant has not previously raised a selective prosecution claim.  Therefore, the claim is presumably procedurally defaulted.  Regardless, the claim can not prevail on the merits.

A claim of selective prosecution requires a showing (1) that the defendant was "singled out for prosecution while others similarly situated were not prosecuted for similar conduct; and (2) that the decision to prosecute was based on an impermissible motive such as race, religion, or an attempt by the defendant to secure other constitutional rights."  United States v. Huff, 959 F.2d 731, 735 (8th Cir. 1992).  Defendant claims he was prosecuted for exercising his right to remain silent when an FBI agent attempted to question him while he was detained on the tribal charges.  Defendant mentions that Brown, Boland, and Garcia were similarly situated.  However, there was no evidence that Boland or Garcia assaulted anyone with a dangerous weapon on January 19, 2002.  Therefore, they were not similarly situated.

Regarding Brown, she was indicted for the same offenses as Defendant.  See Indictment [Docket No. 16].  Brown, however, entered a plea agreement, cooperated with the government, and received a sentence of probation.  Defendant's argument that this amounted to selective

prosecution is meritless because "[i]t is well established that the government retains broad discretion in determining what persons to prosecute and what charges to bring against those persons." United States v. Sandoval-Curiel, 50 F.3d 1389, 1394 (7th Cir. 1995). Brown pled guilty and cooperated with the prosecution. Defendant did not. He has no foundation for a claim of selective prosecution.

Defendant also claims he was selectively prosecuted because the Federal Government has not prosecuted other members of the Red Lake Band of Chippewa Indians who allegedly committed similar crimes. However, this allegation does not show that Defendant was prosecuted because of his race, religion, or because he attempted to exercise his constitutional rights. The fact that federal prosecutors exercise discretion and choose to prosecute some Native Americans but not others does not support Defendant's selective prosecution claim.

**Ground 8: Sufficiency of the Evidence**

Defendant also attacks his conviction and sentence based on alleged defects in the Indictment and insufficiency of the evidence. These claims are procedurally defaulted because they were not raised on direct appeal. Regardless, the arguments Defendant raises under Ground 8 are wholly without merit.

In his Reply Brief, Defendant argues that the aggravated assault counts in the Indictment were defective. The Indictment lists two counts of aggravated assault under 18 U.S.C. §§ 2, 113(a)(3), 1151, and 1153(a). 18 U.S.C. § 113(a)(3) provides that "[w]hoever . . . is guilty of an assault shall be punished as follows: . . . Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by a fine under this title or imprisonment for not more than ten years, or both." The aiding and abetting statute, 18 U.S.C. § 2(a), provides that

"[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." The other statutes listed, 18 U.S.C. § 1151 and § 1153(a), provide that Indians are punishable under federal law for certain offenses committed within Indian country. Among the listed offenses is assault with a dangerous weapon. Although Counts 2 and 3 of the Indictment are titled "Aggravated Assault," those counts specifically refer to and list the elements of assault with a dangerous weapon as set forth in 18 U.S.C. § 113(a)(3). Therefore, there is no basis for Defendant's claim that his Indictment was defective.

Defendant also argues that the evidence was insufficient to show that he aided or abetted an assault, or that a dangerous weapon was involved. However, Boland, Brown, and Garcia all testified that Defendant participated in or aided and abetted the assaults against Boland and Garcia. Further, Brown testified that Defendant put a gun to Boland's head, and Garcia and Brown testified Defendant used his vehicle as a dangerous weapon. This evidence was sufficient to support the jury's verdict. None of the arguments raised in Ground 8 of Defendant's § 2255 Motion have merit.

**Ground 9: Subornation of Perjury**

Defendant argues his due process rights were violated when the prosecutor allegedly suborned perjured testimony. Defendant did not raise this claim on direct appeal. Therefore, it is procedurally barred. Regardless, Defendant can not prevail on the merits of his perjury claim. "To prove prosecutorial use of false testimony, [Defendant] must show that: (1) the prosecution used perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a 'reasonable likelihood' that the perjured testimony could have affected the jury's

judgment." <u>United States v. Martin</u>, 59 F.3d 767, 770 (8th Cir. 1995).

Defendant provides a laundry list of alleged instances where the prosecutor suborned perjury. <u>See</u> Reply Brief at Claim IX. However, Defendant provides no credible basis for his speculative allegations. Defendant seems to argue that if a witness's testimony was impeached during his first trial, then it was perjury for that same witness to testify regarding the previously impeached matter during his second trial. However, "a challenge to evidence through another witness or prior inconsistent statements is insufficient to establish prosecutorial use of false testimony." <u>Martin</u>, 59 F.3d at 770 (quotation marks and citation omitted). Moreover, most of the instances of alleged perjury relate to collateral matters that were not reasonably likely to have affected the jury's judgment. Defendant can not prevail on his perjury claim.

**Ground 10: Prosecutorial Misconduct**

"As a general rule, prosecutorial misconduct does not warrant federal habeas relief unless the misconduct infected the trial with enough unfairness to render [a] conviction a denial of due process." <u>Louisell v. Dir. of Iowa Dep't of Corrections</u>, 178 F.3d 1019, 1023 (8th Cir. 1999) (quotation marks and citations omitted). To violate due process, a prosecutor's conduct must be so egregious as to render a defendant's trial fundamentally unfair. <u>Stringer v. Hedgepeth</u>, 280 F.3d 826, 829 (8th Cir. 2002).

To support his prosecutorial misconduct claim, Defendant alleges that the federal prosecutor unlawfully coerced the Red Lake Tribal Court into agreeing to Defendant's extradition. However, as discussed above, an illegal extradition does not necessarily void Defendant's conviction. Defendant also alleges that the prosecutor intimidated Brown into agreeing to testify against Defendant. This argument is pure speculation. Defendant further

11

alleges the prosecutor should have impeached Garcia during his grand jury testimony. However, grand jury proceedings are nonadversarial and there is no requirement that a prosecutor impeach the credibility of a grand jury witness. Defendant's other prosecutorial misconduct arguments are similarly meritless.

**Ground 12 and Defendant's Suggestions: Jurisdiction under the Major Crimes Act**

Defendant next argues that this Court lacked jurisdiction under the Major Crimes Act, 18 U.S.C. § 1153, because that Act does not specify aiding and abetting liability under 18 U.S.C. § 2. However, the Eighth Circuit has held that "federal laws of general application—those in which the situs of the crime is not an element—apply in Indian country, even to offenses committed by an Indian against the person or property of another Indian." United States v. Yankton, 168 F.3d 1096, 1097-98 (8th Cir. 1999). Therefore, this Court had jurisdiction over the counts of aiding and abetting aggravated assault.

Defendant also argues that 18 U.S.C. §§ 113(a)(3) and 1153 do not refer to "aggravated assault" and therefore this Court lacked jurisdiction. Defendant's argument relies on the fact that 18 U.S.C. §§ 113(a)(3) and 153 both refer to "assault with a dangerous weapon," whereas Counts 2 and 3 of the Indictment refer to "aggravated assault." However, as discussed above, the charging language of Counts 2 and 3 tracks the language of 18 U.S.C. § 113(a)(3). Therefore, this Court properly exercised jurisdiction over Counts 2 and 3 of the Indictment.

**Grounds 13-14: Jury Instructions Regarding Aiding and Abetting Liability**

Defendant also argues that the Indictment did not properly plead aiding and abetting liability under 18 U.S.C. § 2. "It is well established, however, that a defendant may be convicted of aiding and abetting under section 2 even though he may not have been formally charged in

that capacity."  <u>United States v. McKnight</u>, 799 F.2d 443, 445 (8th Cir. 1986).  Therefore,

assuming the claim is not procedurally barred, Defendant has no basis to complain that his

Indictment improperly pled aiding and abetting liability.

Defendant further argues that this Court erroneously instructed the jury regarding aiding

and abetting liability.  As discussed above, 18 U.S.C. § 2 has two provisions.  Section 2(a)

provides that "[w]hoever commits an offense against the United States or aids, abets, counsels,

commands, induces or procures its commission, is punishable as a principal," and § 2(b)

provides that "[w]hoever willfully causes an act to be done which if directly performed by him

or another would be an offense against the United States, is punishable as a principal."  At trial,

the jury was instructed that "[i]n order to have aided and abetted, a person must: (1) have known

that the offense was being committed or going to be committed; and (2) have knowingly acted in

some way for the purpose of causing, encouraging, or aiding the commission of that offense."

Mar. 19, 2004 Tr. [Docket No. 170] at 48-49.  Defendant argues this instruction was erroneous

because the word "willful" or "willfully" was not included.

Defendant's argument improperly conflates 18 U.S.C. § 2(b) with § 2(a).  Section 2(b)

"adopts the 'general principal of causation in criminal law that an individual (with the necessary

intent) may be held liable if he is a cause in fact of the criminal violation, even though the result

which the law condemns is achieved through the actions of innocent intermediaries.'"  <u>United

States v. Concepcion</u>, 983 F.2d 369, 383-84 (2d Cir. 1992) (citation omitted).  However,

Defendant was not tried and convicted under this theory.

Instead, the Government argued Defendant was guilty of aggravated assault as a principal

or as an aider and abettor.  Thus, 18 U.S.C. § 2(a) applied.  Section 2(a) does not contain the

"willful" language of § 2(b).  Therefore, assuming the claim is not procedurally barred,

Defendant has no statutory basis to support that the jury instruction regarding aiding and abetting

liability required the "willful" language of § 2(b).  Further, the Court finds that the challenged

jury instruction adequately specified the requisite mens rea by stating that Defendant must have

known an offense was being committed and must have knowingly acted in some way for the

purpose of aiding the commission of the offense.

**Ground 15: Confrontation Clause**

Finally, Defendant claims his Confrontation Clause rights were violated.  Defendant

alleges that his first counsel's lack of diligence resulted in ineffective cross-examination of

Boland during Defendant's first trial.  Because Boland died before the second trial, Boland's

previous trial testimony was read into evidence at the second trial.  Defendant contends that

counsel's cross-examination was so ineffective as to deprive him of his Confrontation Clause

rights.  This claim was not raised on direct appeal and therefore is subject to the procedural bar.

Regardless, the claim can not prevail on the merits.  Defendant's allegations in support of his

Confrontation Clause claim are speculative, conclusory, and are premised on the ineffective

assistance of counsel and subornation of perjury arguments that have been rejected.  Moreover,

the record shows that Defendant's first trial counsel effectively impeached Boland's testimony

by asking questions about Boland's drug use, the fact that Boland initially lied to the

investigating FBI agent, and Boland's prior felony convictions.  Counsel's performance at

Defendant's first trial was not deficient, and Defendant's Confrontation Clause rights were not

violated.

Since all of Defendant's claims fail, his § 2255 Motion must be dismissed and an

evidentiary hearing is unnecessary.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside,

or Correct Sentence [Docket No. 186] is **DENIED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  July 9, 2007.